# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | Case No. 1:26-cv-02602-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING<br><br>(ECF No. 1) |

Petitioner is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.
## BACKGROUND

Petitioner was born in Mexico and came to the United States in 2000. (ECF No. 1-3 at 2, 3.[1]) In January 2020, Petitioner pleaded guilty to unlawful sexual intercourse with a minor, a violation of California Penal Code section 261.5(d), was sentenced to 345 days in jail and three years of probation, and was released on time served. (ECF No. 1 at 7; ECF No. 1-3 at 4–5.) On January 21, 2023, Petitioner successfully completed her probation. (ECF No. 1-3 at 6.)

On January 24, 2024, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") and transferred to the Golden State Annex Detention Facility ("GSA"). (ECF No. 1-3 at 6.) On May 28, 2024, an immigration judge ("IJ") conducted Petitioner's first

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

and only bond hearing pursuant to § 1226(a) and denied bond, finding Petitioner to be a danger to the community. (ECF No. 1-3 at 6; ECF No. 9 at 53.) On December 13, 2024, the Board of Immigration Appeals ("BIA") affirmed the IJ's bond denial. (ECF No. 9 at 58–60.)

Petitioner started identifying as a transgender woman at GSA. (ECF No. 1 at 10; ECF No. 1-3 at 7–8.) In March 2025, after enduring months of harassment by a group of individuals, Petitioner was sexually assaulted by the leader of this group while in the shower. On July 25, 2025, Petitioner filed a Prison Rape Elimination Act ("PREA") complaint. On September 5, 2025, GSA substantiated Petitioner's PREA complaint. (ECF No. 1-3 at 7.) On or around August 29, 2025, while the PREA investigation was pending, ICE transferred Petitioner to the California City Detention Facility ("California City") along with several members of the group that harassed Petitioner. (Id. at 8.)

On May 29, 2026, an IJ denied Petitioner's applications for relief and ordered Petitioner removed to Mexico. (ECF No. 9 at 62–65.) An appeal of that order is pending with the BIA. (ECF No. 14 at 2; ECF No. 16 at 4.)

On April 6, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On June 5, 2026, Respondents filed a response, and Petitioner filed a traverse on July 6, 2026. (ECF Nos. 9, 10.) The parties have submitted supplemental briefs. (ECF Nos. 14, 16.)

## II.

## DISCUSSION

### A. Applicability of 8 U.S.C. § 1226(c)

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th

525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Id. (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Avilez, 69 F.4th at 530. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

Here, Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to convictions for lewd and lascivious acts, a violation of California Penal Code section 261.5(d), and felony possession of a stolen vehicle. (ECF No. 9 at 3.) Petitioner does not concede that § 1226(c) is applicable because Ninth Circuit precedent is clear that a violation of California Penal Code section 261.5(d) is not a categorical aggravated felony or crime involving moral turpitude ("CIMT") that would render an individual subject to detention under § 1226(c). (ECF No. 10 at 13.)

1. Notice

Respondents argue that Petitioner's California Penal Code section 261.5(d) conviction is an aggravated felony under the modified categorical approach. (ECF No. 14 at 2.) Based on this argument, it appears that Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B), which applies to noncitizens "deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1)(B). Section 1227(a)(2)(A)(iii), in turn, covers "an aggravated felony [conviction] at any time after admission[.]" 8 U.S.C. § 1227(a)(2)(A)(iii).

> Where the ground for removal subjects an alien to mandatory detention, the charging document serves as notice to the alien of the circumstances relied on by the DHS to detain him. However, where the basis for detention is not included in

> the charging document, the alien must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing.

In re Kotliar, 24 I. & N. Dec. 124, 127 (BIA 2007).

Here, the notice to appear ("NTA") charges Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General. (ECF No. 18 at 50.) The NTA does not state that Petitioner is charged with inadmissibility under § 1182(a)(2), or is deportable by reason of having committed any offense covered in §§ 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D), nor does it reference convictions for lewd and lascivious acts and felony possession of a stolen vehicle. "Indeed, there is no evidence in the record that Petitioner ever knew the government was subjecting h[er] to mandatory detention under § 1226(c)(1)[B], or that [s]he could challenge that basis for detention, until Petitioner sought relief in federal court and Respondents opposed h[er] habeas petition." S.G. v. Warden of the Golden State Annex Det. Facility, No. 1:26-CV-03322-TLN-JDP, 2026 WL 2475525, at *3 (E.D. Cal. Aug. 24, 2026). In fact, an IJ previously found Petitioner to be eligible for a bond hearing pursuant to § 1226(a). (ECF No. 9 at 58.) This "raise[s] serious due process concerns." S.G., 2026 WL 2475525, at *3.

"[T]his District routinely finds that § 1226(c)(1)(A) does not authorize mandatory detention where the government has failed to charge a noncitizen with any offense covered by § 1182(a)(2)" because the ""plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2) as prerequisite to mandatory detention under that provision." S.G., 2026 WL 2475525, at *2 (internal quotation marks and citation omitted). This reasoning would similarly apply to § 1226(c)(1)(B).

///

///

///

2. Exhaustion

Respondents appear to argue that Petitioner should be required to pursue a Joseph hearing[2] before any collateral challenge to mandatory detention in this Court. (ECF No. 9 at 3.)

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

"Anyone who believes that he is not covered by § 1226(c) may . . . ask for what is known as a '*Joseph* hearing[,]'" in immigration court at which "that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (quoting Demore v. Kim, 538 U.S. 510, 514 n.3 (2003)). "But it makes little sense to require a petitioner to exhaust administrative remedies to challenge a classification under § 1226(c) when immigration authorities have not classified the petitioner that way" and "Petitioner was not provided with any information that might have placed h[er] on notice that [s]he was detained pursuant to § 1226(c)

[2] Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999).

prior to the filing of h[er] habeas petition." M.J. v. Chestnut, No. 1:26-CV-04775-MWJS, 2026 WL 2139762, at *4 (E.D. Cal. July 24, 2026). Accordingly, the Court recommends waiving any exhaustion requirement.

3. Felony Possession of a Stolen Vehicle

Respondents assert that Petitioner is subject to mandatory detention because she was allegedly convicted of felony possession of a stolen vehicle. (ECF No. 9 at 3; ECF No. 14 at 2.) In support of this assertion, Respondents appear to rely on San Mateo County Case No. 20-NF-000948-A that is reported under "Cycle 005" of the FBI records submitted by Respondents. (ECF No. 9 at 20–21.) Petitioner declares that she was never arrested for, nor convicted of, felony possession of a stolen vehicle. (ECF No. 10-2 at 1.) Additionally, Petitioner has provided the Court with a printout of the case information for San Mateo County Case No. 20-NF-000948-A, which involved a defendant named Maricar Serdon, which is neither Petitioner's true name nor an alias. (ECF No. 10-5; ECF No. 16 at 3.)

Based on the foregoing, the Court recommends finding that Petitioner was not convicted of felony possession of a stolen vehicle and is not subject to § 1226(c) mandatory detention on this basis.

4. California Penal Code Section 261.5(d)

Petitioner argues the Ninth Circuit has held that a violation of  precedent is clear that a violation of California Penal Code section 261.5(d) is not a categorical aggravated felony or CIMT that would render an individual subject to detention under § 1226(c), citing to Pelayo-Garcia v. Holder, 589 F.3d 1010, 1016 (9th Cir. 2009), and Quintero-Salazar v. Keisler, 506 F.3d 688, 694 (9th Cir. 2007). (ECF No. 10 at 13.)

Pelayo-Garcia "present[ed] the question whether the offense of 'unlawful sexual intercourse with a minor' under section 261.5(d) of the California Penal Code meets the definition of 'aggravated felony' in 8 U.S.C. § 1101(a)(43)(A), which includes 'sexual abuse of a minor.'" 589 F.3d at 1011. The Ninth Circuit held "it does not." Id. Respondents argue that the "Ninth Circuit in *Pelayo-Garcia* made no mention of whether that criminal conviction could be an aggravated felony under the modified categorical approach and that the facts in the record

were not sufficient to sustain it." (ECF No. 14 at 2.) However, the Ninth Circuit specifically stated, "We analyze this issue using the categorical *and modified categorical approach* set forth in *Taylor v. United States,* 495 U.S. 575, 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) and *Shepard v. United States,* 544 U.S. 13, 20–21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)." Pelayo-Garcia, 589 F.3d at 1012 (emphasis added).

Respondents argue that Petitioner's California Penal Code section 261.5(d) conviction is an aggravated felony under the modified categorical approach, citing to United States v. Zamorano-Ponce, 817 F. Supp. 2d 1108, 1118 (D. Ariz. 2011), where the "court used modified categorical approach to find a similar state conviction for statutory rape under Washington law matched the federal generic offense of statutory rape." (ECF No 14 at 2–3.) As noted by Petitioner, after Pelayo-Garcia was decided, "the Supreme Court has modified the use of the categorial approach" as set forth in Mathis v. United States, 579 U.S. 500 (2016), and Descamps v. United States, 570 U.S. 254 (2013). (ECF No. 16 at 6.) Petitioner asserts that "use of the modified categorial approach is no longer appropriate with Cal. Pen. Code § 261.5(d)." (Id.) In Esquivel-Quintana v. Sessions, 581 U.S. 385 (2017), the Supreme Court used the categorical approach in determining whether a California Penal Code section 261.5(c) conviction was an aggravated felony under the INA, noting that the "modified categorical approach . . . is not at issue here[.]" 581 U.S. at 389–390 & n.1.

In light of Esquivel-Quintana, the modified categorical approach is not at issue, and Respondents have not adequately explained why Pelayo-Garcia's holding should not control here. Accordingly, the Court recommends finding Petitioner is not subject to mandatory detention under § 1226(c) based on her California Penal Code section 261.5(d) conviction.

5. Conclusion

Based on the foregoing, the Court recommends finding that Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) but rather is subject to discretionary detention under § 1226(a). To the extent Respondents may argue that § 1225(b)(2) is applicable, the Ninth Circuit has rejected Respondents' position in Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026).

**B. Overview of Caselaw Regarding Immigration Detention Statutes**

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that

///

///

is slightly shorter”).[3] However, Justice Kennedy’s concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that “a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.” Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens “challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention.” Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government’s authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[4] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), “the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as ‘the period of . . . confinement grows.’” Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

---

[3] “Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained ‘several significant errors.’” Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the “Supreme Court had inferred from the government’s brief in Demore that in cases in which the alien appeals, the time of detention was ‘about five months,’” the government’s 2016 letter clarified that for years 1999–2001, the “length of detention in cases where the alien appealed [was] 382 days, or a little more than a year.” Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[4] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, “the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond.” Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman Gonzalez*," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

///

"[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

**C. Substantive Due Process**

In the first claim for relief, Petitioner asserts a substantive due process violation. (ECF No. 1 at 33.) Petitioner applies the five-factor test articulated in Doe v. Becerra, 732 F. Supp. 3d 1071 (N.D. Cal. 2024), and Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. Nov. 20, 2025). (ECF No. 1 at 16.)

"As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." United States v. Salerno, 481 U.S. 739, 746 (1987) (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

This Court has previously looked at the following three factors to determine whether an immigration detainee subject to prolonged detention is entitled to relief under the Fifth Amendment's substantive due process clause: "(1) length of detention and whether it is excessive in relation to its regulatory purpose; (2) evidence supporting the determination that detention is warranted to prevent flight risk or community danger; and (3) conditions of

confinement." Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *5 (E.D. Cal. June 22, 2026) (citing Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *7–11 (E.D. Cal. June 2, 2025)). The Court will consider these three factors rather than applying the five-factor Doe test.

1. Length of Detention

In the context of criminal pretrial detention, the Ninth Circuit has observed, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). Torres held that the twenty-one-month detention due to the COVID-19 pandemic and related courthouse closures did not violate due process, but the Ninth Circuit "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")). In the immigration detention context, the Ninth Circuit has stated that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." Diouf v. Napolitano, 634 F.3d 1081, 1092 n.13 (9th Cir. 2011).

The Ninth Circuit has upheld an immigration detainee's detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). This Court has held that a petitioner's "detention of twenty-one months is not excessively prolonged to find a substantive due process violation," Shafaq v. Warden, California City Corr. Facility, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *8 (E.D. Cal. June 22, 2026), and a petitioner's "thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner's substantive due

process rights," Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025). Here, Petitioner has been detained for approximately thirty-three months—shorter than the period at issue in Prieto-Romero. Therefore, the Court recommends finding that the length of detention factor does not weigh in favor of Petitioner for purposes of the substantive due process inquiry.

2. Flight Risk and Danger

With respect to danger and flight risk, the Court reviews the immigration court's determination for an abuse of discretion. Shafaq, 2026 WL 1785249, at *6. "Under an abuse of discretion standard, 'we cannot reweigh evidence ... [but] can [only] determine whether the BIA applied the correct legal standard.'" Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (quoting Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014)).

> To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"
>
>> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.
>
> *Id.* And "[t]he *Guerra* factor most pertinent to assessing dangerousness" is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

Martinez, 124 F.4th at 783.

> Generally, in the absence of any red flags, we take the BIA at its word. For example, "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," we will rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). We do not require the BIA to "discuss each piece of evidence submitted." *Id.* Similarly, we accept that the BIA "applied the correct legal standard" if the BIA "expressly cited and applied [the relevant caselaw] in rendering its decision." *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). But when there is an indication that something is amiss, like if the BIA "misstat[es] the record" or

> "fail[s] to mention highly probative or potentially dispositive evidence," we do not credit its use of a "catchall phrase" to the contrary. *Cole*, 659 F.3d at 771-72.

Martinez, 124 F.4th at 785.

Here, in affirming the IJ's denial of bond based on dangerousness, the BIA stated:

> The respondent contends that he met his burden of proving that his release will not pose a danger to the community because he has a limited criminal history, has expressed remorse for his criminal conduct and engaged in rehabilitation, has lived incident-free in the community for 4 years after his release from jail and prior to his immigration arrest, and received three "low-risk determinations" made during those 4 years (Respondents' Br. at 5-10). The respondent's arguments are unavailing.
>
> Whether a non-citizen poses a danger for purposes of release on bond is a question of judgment that we review de novo, but the factual findings underlying such a judgment are reviewed for clear error. 8 C.F.R. § 1003.1(d)(3)(i)-(ii) (2020). We discern no clear error in the Immigration Judge's finding that on January 21, 2020, the respondent was convicted of unlawful sexual intercourse with a minor who is under 16 years of age, in violation of CALIFORNIA PENAL CODE § 261.5(d), and was sentenced to 345 days in jail and 3 years of probation (IJ at 3; Exh. 2 at 30-33). We also discern no clear error in the Immigration Judge's finding that the respondent was 39 years of age, and his victim was 14 years of age at the time of the offense, and that a protective order was issued (IJ at 4). We also discern no clear error in the Immigration Judge's finding that in January 2017, the respondent was cited for soliciting prostitution following a "pre-arranged agreement" made online "for a sexual act in exchange for money" (IJ at 5; Ex. 2 at 23). *See Matter of Guerra*, 24 I&N Dec. at 40 ("In the context of custody redeterminations, Immigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community."). Thus, while the respondent has incurred only one criminal conviction, the facts and circumstances underlying the conviction, including that it was recent, and involved sexual intercourse with a 14-year-old female when the respondent was 39 years of age, support the Immigration Judge's determination that the respondent's release would pose a danger to the community, and continued detention is justified (IJ at 3-5). *See Matter of Guerra*, 24 I&N Dec. at 40 (holding that "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses," is relevant to a determination of dangerousness).
>
> The Immigration Judge also made findings of fact regarding the respondent's expressed remorse for his conduct, his efforts at rehabilitation, the fact that he has lived in the community for several years without incident, and that he has received three "low-risk" determinations (IJ at 5-7). We discern no clear error, however, in the Immigration Judge's determination that these factors do not sufficiently mitigate the respondent's dangerousness, given the seriousness and recency of, and his attempt to minimize his criminal conduct (IJ at 5-6). *See Matter of Guerra*, 24 I&N Dec. at 40 ("An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable."); *see also Matter of Siniauskas*, 27 I&N Dec. 207, 209-10 (BIA 2018) ("[Actions are a better indication of [an applicant's] future conduct than his assurances to the contrary,"

and "family and community ties generally do not mitigate an alien's dangerousness").

The respondent also contends that the Immigration Judge erred in giving his expert witness's opinion limited weight because he did not allow the expert witness to testify at the bond hearing and did not put the respondent or his expert witness on notice that his "expertise was in question" (Tr. at 13-14; Respondent's Br. at 10-11). On the contrary, the Immigration Judge properly determined the probative value or weight to be given to the expert witness's report and explained his reasoning for his factual findings that departed from the expert witness's opinion, including regarding the respondent's likelihood of recidivism (IJ at 6-7). *See Matter of M-A-M-Z-*, 28 I&N Dec. 173, 177–78 (BIA 2020) ("Expert witness testimony is evidence and so is treated the same as all evidence in immigration proceedings, where the Immigration Judge is the trier of fact and weighs the evidence in accordance with that role. That said, when the Immigration Judge makes a factual finding that is not consistent with an expert's opinion, it is important, as the Immigration Judge did here, to explain the reasons behind the factual findings."). Further, contrary to the respondent's argument on appeal, the Immigration Judge may decline to hear testimony from any witness, including an expert witness, if the Immigration Judge determines that the testimony is, among other things, duplicative or unnecessary (Tr. at 13-14). *See Matter of J-G-T-*, 28 I&N Dec. 97, 102 (BIA 2020) ("We have also recognized that 'Immigration Judges have broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence,' including witness testimony.") (citation omitted).

The respondent also contends that the Immigration Judge's written decision explaining why he gave reduced weight to the expert witness's opinion is a "post-hoc" rationalization that differs from the decision he made at the bond hearing, and thus violated the respondent's due process rights (Respondent's Br. at 12-14). The respondent's argument is unavailing. The Immigration Judge did not issue a decision at the bond hearing that differs from the subsequent written decision. On the contrary, the written decision supports the Immigration Judge's May 28, 2024, order, issued at the conclusion of the bond hearing, denying bond (IJ at 1-7; *see also* May 28, 2024, bond order).

Further, the Immigration Judge's decision to decline hearing any witness testimony during the bond hearing, including from the respondent's expert witness, was not a ruling or decision, implicit or otherwise, that the Immigration Judge agreed with and accepted the expert witness's opinions in full (Tr. at 13-14). Thus, the respondent's suggestion that the Immigration Judge somehow changed his mind and his ruling regarding the expert witness's opinions between the bond hearing and the subsequent written decision is without support (Respondent's Br. at 12-14). The record reflects that the respondent was provided a full and fair bond hearing, and he has not established any due process violations. *See Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016) (holding that the court will reverse on due process grounds "only if the underlying IJ proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'") (citation omitted).

The respondent also requests a remand because the portion of the transcript of the bond hearing where the parties raised their legal arguments includes several "indiscernibles" (Tr. at 14-16; Respondent's Br. at 14-15 and n.3). We decline the respondent's request because the portions of the bond hearing that are indiscernible on the record are not when relevant witness was heard by the

> Immigration Judge. Instead, the portion of the hearing that was not fully transcribed pertains solely to the legal arguments raised by counsel before the Immigration Judge in support of and in opposition to the respondent's bond request, including the respondent's arguments regarding the reliability of the expert witness's testing methods (Tr. at 14-16; Respondent's Br. at 14-15 and n.3). The respondent was provided an opportunity to raise those same legal arguments on appeal, and thus, the presence of the indiscernibles at one portion of the bond hearing transcript does not interfere with the Board's ability to meaningfully review the arguments on appeal. *See also Matter of Chirinos*, 16 I&N Dec. 276, 277 (BIA 1977) ("[T]here is no right to a transcript of a bond redetermination hearing.").

(ECF No. 9 at 58–60.)

A "failure to consider or apply any of the *Guerra* factors and decision to instead rely on . . . evidence that 'bear little if any relevance' to Petitioner's risk of flight [and dangerousness], while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." Perez Velasquez v. Bondi, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (quoting Matter of Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976)). Here, the BIA properly considered Petitioner's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." Martinez, 124 F.4th at 783 (internal quotation marks omitted) (quoting Singh, 638 F.3d at 1206). Unlawful sexual intercourse with a minor is a clear danger to the community, and the BIA was not unreasonable in "believ[ing] that [Petitioner]'s rehabilitative efforts and recent compliance with the law didn't outweigh this 'strong evidence' of danger." Martinez, 124 F.4th at 785. "Because the IJ and the BIA were entitled to place some weight on [Petitioner's criminal record] in their analysis of [danger], the Court generally lacks jurisdiction to review whether they placed too much." Kharis v. Sessions, No. 18-CV-04800-JST, 2018 WL 5809432, at *8 (N.D. Cal. Nov. 6, 2018). See Singh v. Andrews, No. 1:26-CV-05073-JLT-FJS, 2026 WL 2676078, at *3 (E.D. Cal. Sept. 11, 2026) ("[T]he Court lacks the ability to 'second-guess the immigration judge's weighing of the evidence.' *Calmo v. Sessions*, 2018 WL 2938628, at *4 (holding that where the evidence is undisputed, 'differences in interpretation of the facts' remain 'well within the province of the immigration judge')."). Accordingly, the Court recommends finding that the second factor does not weigh in favor of Petitioner.

///

3. Conditions of Confinement

> "[A] civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.' " *Id.* at 933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021) (first alteration added).

In Jones v. Blanas, 393 F.3d 918, (9th Cir. 2004), the Ninth Circuit held:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

Jones, 393 F.3d at 934. However, in Fraihat, which addressed whether ICE's COVID-19 policies reflected unconstitutional punishment under the Fifth Amendment, the Ninth Circuit observed that "*Jones* announced the foregoing comparative presumption in the context of a California state prisoner who was civilly detained and awaiting proceedings under California's Sexually Violent Predator Act" and "Plaintiffs have not identified authority from this Court extending *Jones*'s presumption to the context of federal immigration detainees." Fraihat, 16 F.4th at 648. The Ninth Circuit further observed that there is "no support in our cases for applying *Jones*'s presumption about comparative 'conditions' of confinement to the government's continued *ability* to confine persons pursuant to lawful authority." Id. at 649. Although Fraihat "assum[ed] without deciding that it would be appropriate to invoke that presumption in the immigration context," the Court declines to invoke the presumption here because, as noted by the Ninth Circuit, "different government interests are at stake" in the immigration context. Fraihat, 16 F.4th at 648.

"[D]ue process sets an absolute floor on the conditions civil detainees can be confined in. At a minimum, conditions must be less restrictive than post-conviction criminal detention." Doe, 732 F. Supp. 3d at 1088. Here, Petitioner has been detained in solitary confinement since August

2025, a period of fifteen months. Petitioner is confined to a small cell at least twenty-three hours per day and only gets an hour within a small, enclosed outdoor cage. Some days, Petitioner is not allowed outside. (ECF No. 1-3 at 8.) Petitioner does not have access to social interactions, use of a day room, the media library, law library, religious texts, hot food nor a microwave to heat up food, and opportunities to work and participate in programming. (ECF No. 1 at 21.) Petitioner argues that her "solitary confinement is more restrictive, harmful, and punitive than criminal incarceration" because "[e]ven incarcerated prisoners in solitary confinement are entitled to more out-of-cell time that Respondents provide Jane," (ECF No. 1 at 21), citing to Cal. Code Regs. tit. 15, § 3348(i), which requires a minimum of twenty hours of out-of-cell time per week for persons in restricted housing units unless safety and security considerations preclude such activity.

Petitioner has declared that the conditions at California City are "much worse than at GSA and even worse than when [she] was in jail for [her] criminal offense"—the lights are on twenty-four hours a day, and Petitioner does not have access to clean water, hot food, warm clothing, religious services, and medical care. (ECF No. 1-3 at 8.) It took Petitioner one month to receive a Bible, two months to receive Kosher meals, and the food is cold and barely edible. (Id. at 9.) At GSA, Petitioner received medical attention, medication, and treatment for rectal bleeding, abdominal pain, neuropathy, paralysis, pre-diabetes, high cholesterol, and spine issues. Although a doctor at GSA ordered a colonoscopy for Petitioner after testing positive on a colon cancer screening test, California City has not provided any follow-up medical attention and has not provided any of Petitioner's prior medications. (Id. at 9–10.)

Based on the foregoing, the Court recommends finding that the conditions of confinement factor weighs in favor of Petitioner.

4. Balancing the Factors

In sum, the first and second factors weigh against Petitioner and the third factor weighs in favor. Accordingly, the Court recommends finding that Petitioner is not entitled to relief on

///

///

substantive due process grounds at this time. Should circumstances change, however, due process may dictate a different outcome.[5]

**D. Procedural Due Process**

Here, although the Court has concluded that § 1226(c) is inapplicable, Petitioner appears to have been subjected to mandatory detention under 8 U.S.C. § 1226(c) for many months. Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court recommends finding that unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) without an individualized bond hearing violates

[5] This conclusion does not preclude Petitioner from challenging conditions of confinement and seeking equitable relief and/or damages. See Roman v. Wolf, 977 F.3d 935, 941 (9th Cir. 2020) ("Courts have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation. Here, Plaintiffs' due process claims arise under the Constitution, and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition. Moreover, an implied cause of action exists for Plaintiffs to challenge allegedly unconstitutional conditions of confinement." (citation omitted)); Shafaq, 2026 WL 1785249, at *10 n.6 (noting that "[t]o the extent Petitioner wishes to solely challenge his conditions of confinement, it is unclear whether he can do so through a habeas petition" and any "standalone claim regarding the conditions of her confinement should be raised in a *Bivens* action" (citation and internal quotation marks omitted)).

due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). However, in Lopez, this Court specifically noted that it was "by no means providing any insight as to whether a failure to provide a 'second bond hearing' violates due process. That analysis would be much different than the present analysis of whether due process is implicated in providing an initial bond hearing." Lopez, 631 F. Supp. 3d at 879 n.6.

Here, as Petitioner has already received a bond hearing and is seeking a second bond hearing, the Court finds that the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319

(1976), is applicable. See Rodriguez Diaz, 53 F.4th at 1193, 1206 ("assum[ing] without deciding," in context of petitioner detained under to 8 U.S.C. § 1226(a) seeking a second bond hearing, that Mathews test applied, noting the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); id. at 1219 (Wardlaw, J., dissenting) ("agree[ing] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework to determine whether there was a due process violation"); Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 225 (3d Cir. 2018) (applying Mathews test in the context of § 1231(a)), abrogated by Arteaga-Martinez, 596 U.S. 573; Banda, 385 F. Supp. 3d at 1118 (noting that "the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing").

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

1. Private Interest

It "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). Petitioner "has a legitimate and reasonably strong private liberty interest under *Mathews.*" Rodriguez Diaz, 53 F.4th at 1207. Accordingly, the Court finds the first Mathews factor weighs in favor of Petitioner.

///

2. Risk of Erroneous Deprivation

Like the petitioner in Rodriguez Diaz, the initial determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small.'" Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)). On the other hand, Petitioner has been wrongfully subjected to mandatory detention under § 1226(c) for months and thus, did not have a statutory right to a bond hearing or the right to seek additional bond hearings. There is no indication "that Petitioner received notice of the basis for mandatory detention, nor any evidence that Petitioner was provided a hearing to challenge such basis." Ere v. Warden, Golden State Annex Detention Center, No. 1:26-CV-01530-DC-CKD, 2026 WL 3072724, at *4 (E.D. Cal. Oct. 14, 2026). "The lack of notice and opportunity for a hearing in this context substantially risked erroneous deprivation of liberty, as Petitioner was detained for [several] months without an opportunity to challenge the lawfulness of his detention." Id. Accordingly, the Court finds the second Mathews factor weighs in favor of Petitioner.

3. Government Interest

"[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). "These are interests of the highest order that only increase with the passage of time." Rodriguez Diaz, 53 F.4th at 1208. "The government interest in immigration enforcement in general is surely substantial. But the question here is not the government's interest in immigration enforcement [in general] but its interest in" detaining Petitioner without providing her with a bond hearing. Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (The "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing."), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020); Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in

enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). The Court finds the third Mathews factor weighs in favor of Petitioner.

Based on the foregoing, the Court recommends finding that Petitioner's continued detention has become unreasonable and procedural due process requires that Petitioner be provided a bond hearing.

**E. Remedy**

"The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Doe v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods"))); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program[.]").

The Court further finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing ordered pursuant to the Due Process Clause). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and

establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the second claim for relief and DENIED on the first claim for relief.
2. Respondents be ordered to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).
3. Respondents be enjoined and restrained from continuing to detained Petitioner pursuant to 8 U.S.C. § 1226(c).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 12, 2026**

STANLEY A. BOONE
United States Magistrate Judge